02-11-415-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00415-CR

 

 


 
 
 Jonathan
 Eugene Simon
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 297th District
 Court
  
 of
 Tarrant County (1125095D)
  
 January
 31, 2013
  
 Opinion
 by Justice Gabriel
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
some error in the trial court’s judgment.  The judgment is modified to correctly
reflect that Appellant pled “not true” to the petition to adjudicate.  It is ordered
that the judgment is affirmed as modified.

SECOND DISTRICT COURT OF APPEALS

 

 

 

By_________________________________

    Justice Lee Gabriel

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00415-CR


 
 
 Jonathan Eugene Simon
 
 
  
 
 
 APPELLANT
 
 
 
 
 V.
 
 
 
 
 The
 State of Texas
 
 
  
 
 
 STATE
 
 


----------

FROM THE 297th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

Introduction

          Appellant
Jonathan Eugene Simon appeals his conviction and sentence for burglary after
the trial court adjudicated his guilt and revoked his deferred-adjudication
community supervision (probation).  In his sole point, he claims that the trial
court abused its discretion by revoking his probation because the evidence is
insufficient to show that he violated one of the terms of his probation by
committing a new offense.  We modify the judgment of the trial court and affirm.

Procedural
History

          In
2009, Appellant pled guilty to burglary of a habitation in exchange for five
years’ probation and a $500 fine.  One of the terms of his probation required
that he not commit a new offense.

          In
2011, the State filed its petition to adjudicate, alleging only that Appellant
committed a new offense––hindering apprehension.  See Tex. Penal Code
Ann. § 38.05 (West 2011).  Appellant pled “not true,” and after a hearing, the
trial court found the allegation true, adjudicated Appellant’s guilt, revoked
his probation, and sentenced him to ten years’ confinement.[2]

Standard
of Review

          The
decision to adjudicate guilt and revoke deferred adjudication probation is
reviewable in the same manner as a revocation of ordinary or what is commonly known
as “straight” probation.  Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b)
(West Supp. 2012).

          We
review an order revoking probation for an abuse of discretion.  Rickels v.
State, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); Cardona v.
State, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984).  In a revocation
proceeding, the State must prove by a preponderance of the evidence that the
defendant violated the terms and conditions of his probation.  Cobb v. State,
851 S.W.2d 871, 873 (Tex. Crim. App. 1993).  The trial court is the sole judge
of the credibility of the witnesses and the weight to be given their testimony,
and we review the evidence in the light most favorable to the trial court’s
ruling.  Cardona, 665 S.W.2d at 493; Garrett v. State, 619 S.W.2d
172, 174 (Tex. Crim. App. [Panel Op.] 1981); Allbright v. State, 13
S.W.3d 817, 818–19 (Tex. App.––Fort Worth 2000, pet. ref’d).  If the State
fails to meet its burden of proof but the trial court still revokes probation,
the trial court abuses its discretion.  Cardona, 665 S.W.2d at 493–94.

Discussion

          Appellant’s
light blue Chevrolet Caprice was parked at the Park Vista Townhomes in Watauga when
two officers arrived around 11:00 in the morning with an arrest warrant for
Deatrice Pendergraph.  They heard that Pendergraph might be with Appellant in
the apartment leased to her cousin, Tendra Brookins.

          Officer
Elston had covered the back door of Brookins’s apartment as Officer Williams
knocked on the front, announcing “Police, open the door.”  There was no answer.

          Officer
Williams contacted Detective Paula Hernandez, who, after obtaining a land-line
number for the apartment, dialed the number.  When no one picked up on the
other end, she left a message stating that the police were looking for
Pendergraph.

          After
Detective Hernandez finished her message, Appellant opened the front door with a
small child in tow.  Appellant was wearing a white towel over dark shorts and
explained that he had been in the shower.  Officer Williams testified at the adjudication
hearing that it did not appear to him that Appellant had been in the shower because
there was no water on Appellant’s hair, skin, or towel.

          When
Officer Williams asked if Pendergraph was in the apartment, Appellant said she
was not.  And when the officer asked if he might come in and look for himself,
Appellant asked if he had a search warrant.  Officer Williams replied he did
not and Appellant said that he could not let him in because the apartment belonged
to someone else.

          Suspecting
that Pendergraph was hiding inside the apartment, the officers kept Appellant
outside while Detective Hernandez contacted Brookins to get her consent for a
search.  As they waited for Brookins to arrive, the officers continued to ask Appellant
if Pendergraph was in the apartment.  He consistently answered that she was not
there, and he suggested that they look for her at a day care center where she
worked in southwest Fort Worth.

          The
officers noticed Appellant using his cell phone during this time, and when Officer
Williams asked him to call Pendergraph on her cell phone, he refused, saying she
would not answer if he did.

          Evidence
admitted at the hearing, that included phone company records, shows that during
the time that Appellant was outside with the police while they waited for
Brookins, Appellant exchanged calls and text messages with Brookins, with his mother,
and with Pendergraph’s sister, Tae.[3]

          Although
Appellant refused to call Pendergraph––and the phone records show that he did
not, in fact, call her the entire time he was outside with the police, a period
that began around 11:00 that morning––at 12:27, she texted him: “Im cumin
down.”  Immediately, he texted back: “No.”

          At
12:28, Pendergraph texted:  “Fatty said they got a warrant.”[4]  Appellant replied:  “For
who?”  She texted back:  “Me.”  Appellant replied:  “Ima have to tell them u
here first so I want go too jail.”

          Officer
Williams testified that Brookins arrived at approximately 12:30 and gave her
consent for the officers to search the apartment.  At 12:32, Appellant texted
Pendergraph:  “Where u at?”  She replied:  “Im here.”  At 12:33, he texted “Kum
out.”

          The
officers went into the apartment and called out for Pendergraph.  She
immediately came down the stairs and was promptly arrested on the warrant.

          Officer
Williams then advised Appellant that he, too, was under arrest.  Appellant
produced his cellphone and tried to show Officer Williams the one text he had
sent to Pendergraph, asking, “Where u at?”  Officer Williams confiscated the
phone and read through the messages that Appellant and Pendergraph had exchanged
while Appellant was outside and refusing to call her, claiming she wouldn’t
answer.

          Officer
Williams testified that Pendergraph admitted she and Appellant had both been in
the apartment when the officer had knocked on the door, did not know which one
of them the police were looking for because they had both been in trouble in
the past, realized that the officers were looking for her when Detective
Hernandez left the message on the phone, and made a plan for her to hide that included
Appellant opening the door when he did.

          Pendergraph
and Appellant both testified at the hearing.  She denied making any statements
to Officer Williams indicating that she and Appellant had planned for her to
hide from the police.  Both of them denied that Appellant had known that Pendergraph
was in the apartment when the officers came to the door.

          Pendergraph
also testified that Appellant is the father of her two children.  She testified
that she and the children had spent the night before her arrest at the apartment
with Brookins and her two children.  She stated that she called Appellant that
morning to ask him for a ride to take the children to school but that when he
arrived, he was ill, so she drove one child to school in Appellant’s car and
left the younger child, who was sleeping, in the apartment with Appellant. 
When she returned to the apartment, Appellant was asleep, so not wanting to
wake him, she did not tell him that she had come back.

          Pendergraph
explained that when the police knocked on the door, she hid under her cousin’s
bed, and that while talking to family members on her cell phone, she heard the
message on the land line answering machine left by Detective Hernandez saying that
the police were looking for her.  She claimed that she never knew that Appellant
had answered the door until her cousin had arrived and told her by phone that
Appellant and the child were outside with the police.  She further testified
that, after finishing up calls to her family, she saw Appellant’s text asking
where she was and that he had not known she had returned to the apartment until
she had texted him “Im here.”

          Appellant
testified that he was in the shower when the police knocked on the door and that
he did not know Pendergraph had come back.  He acknowledged that once he was
outside, through text messages and phone calls, he put it together that she was
back, and he texted her to tell her that he was going to have to tell the
police where she was so he would not go to jail.  Appellant’s lawyer asked him
if he would have protected himself over the mother of his children.  He
replied, “Yes, ma’am, I will.”

          After
hearing all the testimony and arguments of counsel, and after pointing out that
it was the trial court’s duty “to determine the credibility of the witnesses”
and that the court was “the sole arbiter of that in this hearing,” the judge
noted that he had “evaluated the testimony” and was convinced to a degree
exceeding the State’s burden of proof that Appellant had violated the
conditions of his probation as alleged in the State’s petition.  We have
examined the record of the hearing in the appropriate light and hold that the
record supports the trial court’s ruling that Appellant committed the offense
of hindering apprehension by a preponderance of the evidence.  See Cardona,
665 S.W.2d at 493; Allbright, 13 S.W.3d at 818–19.  Therefore, we hold
that the trial court acted within its discretion by revoking Appellant’s
probation, and we overrule Appellant’s sole point on appeal.  See Rickels,
202 S.W.3d at 763; Cardona, 665 S.W.2d at 493; Brown v. State,
354 S.W.3d 518, 519 (Tex. App.––Fort Worth 2011, pet. ref’d); see generally
Cherry v. State, 215 S.W.3d 917, 919–20 (Tex. App.––Fort Worth 2007, pet.
ref’d).

Conclusion

          Having
overruled Appellant’s sole point, the trial court’s judgment as modified is
affirmed.

 

 

LEE GABRIEL
JUSTICE

 

PANEL: 
MCCOY,
MEIER, and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  January 31, 2013









[1]See Tex. R. App. P. 47.4.





[2]The judgment reflects that Appellant pled “true” to the petition to adjudicate.  This
is contradicted by the record of the hearing, however, which reflects that Appellant pled “not
true” and that his counsel presented evidence and
argument in his defense.  Accordingly, we reform the judgment to correctly
reflect that Appellant pled “not true.”  Tex. R. App. P. 43.2(b); see French v. State, 830 S.W.2d
607, 609 (Tex. Crim. App. 1992); Carnley v. State, 366 S.W.3d 830, 833
n.5 (Tex. App.––Fort Worth 2012, pet. ref’d); Blavier v. State,
No. 06-11-00147-CR, 2011 WL 6288046, at *2 (Tex. App.––Texarkana, Dec. 15,
2011, no pet.) (mem. op., not designated for publication) (reforming judgment
to reflect plea of not true).





[3]The phone
records show that Appellant called Brookins at 11:44
a.m., took a seventeen-second call from Tae at 11:52, called
his mother twenty-four seconds after that and took a call from her at 11:56,
took two incoming calls lasting three minutes each at 11:59 and 12:00 from
someone designated “NY” on his phone and from Tae, respectively, and, finally,
made another call to Brookins at 12:04.





[4]The
record shows that “Fatty” was a nickname for Brookins.